## Richard's Appeal.

1. A., an old man, but in full possession of his faculties, resided with his daughter, B., his granddaughter, C., and the husband of the latter, D. He broke his leg by accident, was confined to the house, and much depressed in his spirits. While in this condition, D. procured a person to simulate a constable, who read in A's presence a pretended summons in an action against A., for slander. A. was not apparently distressed at this occurrence, but D. told him that he would be ruined, and advised him to convey his property to B. and C., promising that in that event, he (D.) would endeavor to settle the case. A. assented, and signed an

[ Richard's Appeal.]

agreement to convey certain land to D., whereupon D. shortly after produced a paper purporting to be a settlement of the alleged slander suit. A. then executed to D. a conveyance of the land, subject to certain charges, for the benefit of the grantor and of B.  B. however, was dissatisfied with this conveyance, and induced A. to execute another, whereby the land was conveyed again to D. subject to similar, but somewhat heavier charges. Eight years afterwards, the creditors of C. having in the meantime levied upon the premises, A. filed a bill in equity averring that the conveyance had been fraudulently obtained from him and praying to have said conveyance annulled and the property restored to him. *Held*, that there was no sufficient evidence that A. had been imposed upon, and that under the circumstances the bill should be dismissed.

2. A bill in equity which prays for the cancellation of a deed alleged to have been procured by fraud and for a decree restoring to the complainant the possession of land will be dismissed as an ejectment bill.

March 1st 1882.     Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from the court of Common Pleas of *Berks county :* Of July Term 1881, No. 10.

This was an appeal by Joseph Richard from a decree of said court, dismissing a bill in equity filed by him against James E. Cherrington, George Himmelberger and Sarah his wife, M. S. Thirwechter and Adam C. Klopp, praying that a certain deed executed by complainant to said Cherrington be set aside and cancelled on the ground that the same was procured by fraud perpetrated by Cherrington, and that possession of the premises thereby conveyed, be restored to the complainant. The defendants, Thirwechter and Klopp, were judgment creditors of Cherrington, and purchasers at sheriff's sale of said premises which were sold as the property of Cherrington under executions against him.  The complainant had read at the sale a notice that said deed had been procured by fraud, and that the purchaser would acquire no title.  Answers were filed by the defendants, other than Cherrington, against whom a decree was taken pro confesso.  The respondents averred that the proceeding was a conspiracy between plaintiff and Cherrington to defraud them.

The cause was referred to an examiner and master (Jeff. Snyder, Esq.) who reported the facts to be substantially as follows :

The plaintiff below was the owner of a farm in Marion Township, Berks county, Pa., upon which he resided with his granddaughter, Amanda, and her husband, James E. Cherrington.  In June, 1871, being then seventy years of age, he had his leg broken by the kick of a horse, and for two months was confined to the house and much depressed.  At this time Cherrington procured from him a conveyance of the farm in

the following manner: He induced one Henry Derr to impersonate a Philadelphia policeman, and to serve upon plaintiff a summons to appear before a magistrate in Philadelphia, to answer one Dr. James Hoffman in damages for words spoken derogatory to the doctor's professional skill, which the said Derr did, and also summoned Cherrington as witness. Plaintiff showed no particular concern at the suit, but afterwards took counsel of Cherrington, who said that the suit would ruin him, that he had better settle the case, and give his property to his daughter, Mrs. Himmelberger, and granddaughter, Mrs. Cherrington, and if he did so, he, Cherrington, would endeavor to settle the case. Plaintiff consented, and Cherrington procured plaintiff's signature to an agreement to convey the farm to him, and then went to Philadelphia, and returning, alleged that he had the matter fixed, and showed plaintiff a paper to that effect. As a matter of fact there never was any such suit. He then accompanied plaintiff to a justice of the peace in Lebanon County, where a deed was drawn up and executed. The arrangement was that Cherrington was to have the farm, but was to give to Sarah Himmelberger a bond for $5,000, payable without interest, upon the decease of Richard, and was moreover to permit Richard to reside upon the farm, and permit him to receive annually certain farm produce, and moneys of the value altogether of $350 per year.

After the execution and delivery of the deed, bond and agreement of reservation, Mrs. Himmelberger expressed dissatisfaction at the manner in which the papers were drawn, and two weeks after procured M. S. Thirwechter, one of the defendants, to draw another deed, bond and agreement of reservation, which were also executed, and then substituted for the first deed, which had never been recorded. When Richard was questioned as to the reasons for his action, he treated it as a disposition of his estate, because he was getting too old to keep it, or because of the kind treatment he had received from Cherrington and his wife during his illness.

Cherrington took possession of the farm, and for a period of nearly eight years after the transfer Richard lived in the family of Cherrington, and recognized the validity of the transaction, while Cherrington encumbered the land with liens. During this time Richard had suspicions that Cherrington had deceived him, but he never made a word of inquiry. Cherrington himself a few days before the 5th of April, 1879, revealed the matter to him.

The farm was sold as the property of Cherrington on the 5th day of April, 1879, on execution issued upon a judgment obtained by M. S. Thirwechter and Adam C. Klopp, two of the defendants in this suit, and purchased by them to protect

[Richard's Appeal.]

a judgment given them by Cherrington for $887. Notice was given at the sale by plaintiff that the farm had been procured from him by fraud, and that the title was still in him, and subsequently he filed this bill praying for a decree annulling his deed, and asking that possession of the farm be given him.

The master reported his conclusions of fact to be as follows:—

1. That Joseph Richard made conveyance of the premises described in the deed of September 8th 1871, to James E. Cherrington, for the following considerations, to wit:

*a.* The erroneous belief that he was indebted to Cherrington for the settlement of a vexatious and ruinous law-suit.

*b.* The annual rendering to himself during his lifetime, of moneys, goods and services, equivalent in value to $350.

*c.* The payment of $5,000 to his daughter on the 1st day of April, after his death.

*d.* The love and affection which he bore to his granddaughter and her husband, enhanced by the kind treatment which he had received from them in his sickness.

*e.* The belief that he was getting too old to take care of the farm.

It was the combined influence of these considerations, and not one of them alone, that induced Mr. Richard to convey his property.

2. Mrs. Himmelberger and her husband were not cognizant of any fraud practiced upon Mr. Richard, and they were not responsible, in any way, for Mr. Richard's action, but endeavored to dissuade him from his purpose.

3. The bond of $5,000 now held by Mrs. Himmelberger, was valuable consideration to Mr. Richard for the farm, and was by him made a voluntary gift to his daughter, without any solicitation by her, or by any one else, for her.

4. Mr. Richard accepted as true, the false representations of Cherrington with regard to the alleged suit before a Philadelphia magistrate, although no summons had been served upon him. He was in full possession of his mental faculties at this time, and was in almost daily intercourse with his daughter and son-in-law and neighbors. He counseled with no one but Cherrington, and mentioned the matter of this supposed suit to no other person. On every occasion when he spoke of the transfer of the property, he gave only reasons for his conduct other than those arising from Cherrington's fraudulent representations.

5. For a period of nearly eight years after the transfer, Mr. Richard lived in the family of Cherrington, and recognized the validity of the transaction, while Cherrington encumbered the land with liens. During this time, Mr. Richard had suspicions

that Cherrington had deceived him, but he never made a word of inquiry; Cherrington himself, a few days before the 5th of April 1879, revealed the matter to him.

6. The farm was sold as the property of Cherrington, on the 5th day of April 1879, on execution issued upon judgment obtained to No. 195, May Term 1878. It was purchased by M. S. Thirwechter and Adam C. Klopp, to protect a judgment given them by Cherrington to No. 260, November Term 1875, for $887. This sum of $887 was money due from Cherrington to the plaintiffs for lumber furnished by the latter to build a house in Stouchsburg, on a lot of ground purchased subsequent to the date of the Richard deed.

7. Messrs. Thirwechter and Klopp had notice given them at the sheriff's sale, that Mr. Richard claimed that the farm had been procured from him by fraud and deceit, that the title was still in himself, and that the farm never belonged to Cherrington.

The Master's conclusions of law were:—1. That the deed from Mr. Richard to James E. Cherrington, dated 8th September 1871, was never absolutely void, At most it was merely voidable for a time at the option of Mr. Richard.

2. That the conduct of Mr. Richard, in relation to one of the inducements leading to the execution of said deed, and of which he now complains, was grossly negligent, and this in connection with his conduct since the execution of the deed, amounts to acquiescence in the transaction.

3. That the bond of Mrs. Himmelberger being a gift to her from Mr. Richard, completed by delivery and without a taint of fraud, is irrevocable, and this is independent of Mr. Richard's right to recover the farm.

The Master therefore recommended that the complainant's bill be dismissed with costs.

Exceptions filed by Richard to the Master's report, were dismissed by the Court, in the following opinion by SASSAMAN, J.:—We have carefully examined all the papers submitted for our consideration in this case. We are quite free to say that while we would not adopt all the reasoning of the Master in his findings of fact and his arguments, through which he comes to his conclusions of law, we regard the final result which he obtained, as fair in fact and right in law.

It is true that the bill is taken as pro confesso against James E. Cherrington, and if he stood alone as defendant to this bill, notwithstanding the lapse of time, we might treat the case somewhat differently and look at it from another standpoint. As it is, however, we must regard the other parties as entirely innocent and treat them so. The situation which they occupy was induced by his own act, and as to them he can have no relief in

this bill. It is a well-settled doctrine, that where parties out of several must suffer, those least in fault, should suffer least. And that those of them not in fault at all, shall not share in suffering with those who were in fault. We endorse the final conclusions of the Master.

And now, April 9th 1881, it is adjudged and decreed that all the exceptions filed to the Master's report are dismissed, the Master's report is approved and this bill is dismissed at the costs of the plaintiff.

The complainant took this appeal, assigning for error the decree dismissing his bill.

*R. L. Jones* and *Cyrus G. Derr*, for the appellant.— There can be no doubt that the deed, having been procured by fraud, is void against all the world, excepting him only who can bring himself within the legal definition of " a purchaser for value without notice :" Kerr on Fraud and Mistake, 312.

This being the rule, the question arises, Who are the defendants ? Are they or any of them "purchasers for value without notice ?"

1. Cherrington, the first defendant, having himself perpetrated the fraud, is clearly not a purchaser without notice. We may dismiss him, for as against him the case is clear.

2. Thirwechter and Klopp make their first appearance in the matter as judgment creditors of Cherrington. It is well settled in Pennsylvania that judgment creditors are not purchasers: Cover *v.* Black, 1 Barr 493 ; Shryock *v.* Waggoner, 4 Casey 430 ; 2 Leading Cases in Equity, 108–9 ; Patten *v.* Moore, 32 N. H. 384.

When they became purchasers of Cherrington's title at the sheriff's sale, it was with full knowledge of the fraud, notice thereof having been read at the sale. They stand, therefore, as purchasers, in no better position than Cherrington : Pattern *v.* Moore, 32 N. H. 384. As to the defendant Mrs. Himmelberger, though not cognizant of the fraud, she holds a portion of the fruits of it, for the bond which she possesses would not have been given but for the fraud, and its chief value now consists in the fact that, in the fraudulent· deed, it is charged upon the farm. She paid no value for it, but received it as a mere volunteer, and therefore stands as one with notice : Mansell *v.* Mansell, 2 P. Wms. 681. As the fraud in this case was not discovered until the beginning of April 1879, and under the circumstances could not by reasonable diligence have been sooner discovered, and as the bill in equity was filed within ten months afterwards, there is no bar to this proceeding by lapse of time.

*James N. Ermentrout* (with him *Daniel Ermentrout*, *Wm. P. Bard* and *E. H. Shearer*), for the appellees.

[Richard's Appeal.]

Mr. Justice GORDON delivered the opinion of the court, March 13th 1882.

It is alleged that the inducing cause for the making of the deed of September 8th 1871, by the appellant to James Cherrington, was the fraud of the latter by which Richard was induced to believe that Cherrington had been instrumental in procuring the settlement of a suit which the appellant was made to think a certain Dr. Hoffman had brought against him. The facts, however, do not impress us with this view of the case.

It is difficult to comprehend how a man of age and experience, in the full possession of all his faculties, could be imposed upon by a trick so simple as that of the reading of a subpœna in his presence, purporting to have issued in a suit against himself of which he had never before heard. Nor, if he were at all alarmed thereby, is it any less difficult to understand why he was not induced to make some inquiry as to the probability or possibility of a suit having been commenced against him without any show of process.

Be this, however, as it may, it is, nevertheless, next to impossible to make the alleged fraud fit the case, for when the deed was executed the farce was fully played out and at an end; Cherrington professed to have settled the suit; if the old man ever had any anxiety upon that subject, it was wholly allayed by the production of a pretended settlement, concocted, like the suit, by Cherrington, and which he did not pretend cost him, or was to cost Richard, a single dollar. How then, could this cause, no longer operative, induce the execution of the deed? It may, indeed, have led the appellant to believe that Cherrington was a very smart man, and so induced a confidence to which he was not entitled, but we cannot see how it could have been productive of any other effect. But, in view of the evidence, it is difficult to concede to it an effect even of this kind. The papers before us seem to have been but the present execution of a preconceived testamentary design. Cherrington was married to Richard's granddaughter, and they, whom he regarded as his children, had lived with him for several years, and had taken care of him during the illness caused by the accident which had crippled him. It was, therefore, but natural that he should have sufficient affection for, and confidence in, Cherrington to make with him the contract we have before us of which the deed in controversy is part.

Nor do we regard this as a transaction of either haste or fright. There was first a deed executed before Esq. Stewart; this, because of objection made by Mrs. Himmelberger, the grantor's daughter, was abandoned, and some two weeks afterwards, the one in controversy, drawn by M. S. Thirwechter and acknowledged before Esq. Tice, was substituted. With this

deed, if we believe the plaintiff, Cherrington had little or nothing to do, for at this time the daughter, Sallie, seems to have been the directing spirit. Concerning this transaction the appellant speaks as follows: "Then Sallie, my daughter, was not pleased with the arrangement. Don't recollect whether Sallie got the deed and took it to Thirwechter, or whether Jim took it there. I don't know whether it is destroyed or not, but I think it was. Sallie was not pleased about her bond. I guess that was the chief difficulty; am not sure whether she had the bond, or whether Thirwechter just made it. Then Thirwechter made a deed, and wrote these things as Sallie liked it; this was another deed." Here we find Cherrington put entirely into the background, and his influence and interest wholly eclipsed by the superior power and skill of his mother-in-law, who arranges all things to suit herself.

It does seem to us that by this time, any little effect which Cherrington's small trick might have produced on the mind of Richard must have wholly disappeared, or if still remembered was utterly barren of results. Furthermore, when we come to look at the deed, we cannot find in it any evidence of imposition on the grantor. The land conveyed by it was valued at ten thousand dollars; doubtless all it was worth, for in this, as in other things connected with this transaction, the daughter, Mrs. Himmelberger, was not to be imposed upon, however it might be with her father. But the one half of this valuation was charged upon the land in favor of Mrs. Himmelberger, to be paid to her on the first day of April next succeeding the appellant's death, and it was further charged with his maintenance during life. It cannot, therefore, be said, that in this transaction, the old man was not wise enough to provide both for himself and his daughter, neither can it be said that Cherrington, in view of what he might reasonably expect by way of testamentary disposition, made much of a bargain.

Considering, then, the manner in which the vendor's interests are provided for in the deed, and the deliberation and caution exercised in the execution of that instrument, we cannot believe that the fraud of Cherrington exercised any material influence over the mind of the plaintiff.

Nor is the length of time, some eight years, that passed before the discovery of the alleged fraud, and the circumstances attendant upon that discovery, altogether without significance. It is passing strange that Richard never so much as mentioned, or alluded to, Cherrington's services in the settlement of the suit about which he professed to be so much alarmed, and it does seem strange that he did not, at the time, manifest interest enough in the matter to inquire how an action at law could be brought against him without service of process. Neither are

[Haak's Appeal.]

these questions robbed of the force given to them by the Master, by the fact that the discovery of the fraud was made just at the time when it became necessary to withdraw, if possible, this property from the grasp of Cherrington's creditors.

We may add by way of conclusion, that as the bill, in this case, requires not only a cancellation of the alleged fraudulent deed, but also a decree for the restoration of the possession of the land, now in the sheriff's vendee, the court might have dismissed it as an ejectment bill. In this particular the case is covered by Long's Appeal, 11 Nor. 171.

The appeal is dismissed, and the decree affirmed with costs, to be paid by the appellant.